Cary Kletter (SBN 210230)
Rachel Hallam (SBN 306844)
KLETTER LAW
111 S. Claremont Street, Suite A
San Mateo, CA 94401
(415) 434-3400
rachel@kletter.law

Attorneys for PLAINTIFF
SKIP STREETS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SKIP STREETS,<br><br>PLAINTIFF,<br><br>v.<br><br>EPSILON DATA MANAGEMENT, LLC.; and DOES 1 through 10, inclusive,<br><br>DEFENDANTS. | Case No. 8:25-cv-2175<br><br>**COMPLAINT**<br><br>1. Breach of Contract;<br>2. Breach of Covenant of Good Faith and Fair Dealing;<br>3. Intentional Misrepresentation;<br>4. Failure to Pay Wages;<br>5. Penalties for Untimely Payment of Wages;<br>6. Failure to Provide Accurate Wage Statements;<br>7. Waiting Time Penalties;<br>8. Unfair Business Practices;<br>9. Retaliation in Violation of Labor Code § 98.6;<br>10. Retaliation in Violation of Labor Code § 1102.5; and<br>11. Wrongful Termination in Violation of Public Policy. |

PLAINTIFF alleges as follows:

## INTRODUCTION

1. This is an action brought by PLAINTIFF SKIP STREETS ("PLAINTIFF" or "STREETS") against the DEFENDANT EPSILON DATA MANAGEMENT, LLC. ("EPSILON" or "DEFENDANT"), and DOES 1 through 10 in connection with claims arising

out of PLAINTIFF's employment with DEFENDANT.

2. This is an action for damages due to the following: (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Intentional Misrepresentation, (4) Failure to Pay Wages, (5) Penalties under Labor Code § 210, (6) Failure to Provide Accurate Wage Statements, (7) Waiting Time Penalties, (8) Unfair Business Practices,(9) Retaliation in Violation of Labor Code § 98.6, (10) Retaliation in Violation of Labor Code § 1102.5, and (11) Wrongful Termination in Violation of Public Policy..

3. Plaintiff files this First Amended Complaint in compliance with the court's May 19, 2026 order and without waiving any rights or arguments asserted in the original complaint or on appeal.

**THE PARTIES**

4. Plaintiff SKIP STREETS is, and at all relevant times herein was, a resident of the State of California and was employed by Defendant EPSILON DATA MANAGEMENT, LLC. in the State of California.

5. Defendant EPSILON DATA MANAGEMENT, LLC. is, and at all relevant times was, a Delaware limited liability corporation doing business in the State of California.

6. DOES 1 through 10 are sued herein under fictitious names. Their true names and capacities are unknown to PLAINTIFF at this time. PLAINTIFF will amend this complaint to allege their true names and capacities when ascertained. PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named DEFENDANT is responsible in some manner for the occurrences alleged herein and that PLAINTIFF's damages were proximately caused by those DEFENDANT.

7. At all times herein mentioned, DEFENDANT ratified each and every act or omission complained of herein. At all times herein mentioned, DEFENDANT aided and abetted the acts and omissions of each and all of the other DEFENDANT in proximately causing the damages and other injuries, as herein alleged.

///

## JURISDICTION AND VENUE

8. Jurisdiction and venue are proper in this judicial district pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## FACTUAL ALLEGATIONS

9. On or about April 29, 2022, PLAINTIFF began his employment with DEFENDANT as Vice President of Sales. His responsibilities included selling Epsilon's Technology Platforms and Services to Automotive Original Equipment Manufacturers ("OEMs").

10. PLAINTIFF's offer letter provided that he would receive an annual base salary (a draw) of $185,000 and commission payments based on an annual incentive compensation plan. A true and correct copy of the offer letter is included as Exhibit A.

11. Throughout his employment, PLAINTIFF consistently exceeded performance expectations, generating substantial business opportunities for EPSILON. However, he was subjected to unlawful employment practices.

12. In or around December 2023, PLAINTIFF closed a sale with Hyundai for the Epsilon Loyalty Platform, valued at approximately $2,700,000. PLAINTIFF documented the transaction in EPSILON's internal system, Zoho.

13. Under the terms of his offer letter and compensation plan, PLAINTIFF was entitled to a commission of $88,219.84 for the Hyundai deal. Despite his repeated internal communications and appeals, EPSILON failed to pay PLAINTIFF this commission until November 15, 2024—nearly one year later.

14. In early 2024, PLAINTIFF appealed EPSILON's failure to pay commission for the Hyundai deal completed and earned in December 2023.

15. In response to PLAINTIFF's appeal, in early 2024, PLAINTIFF was reassigned away from his role selling to Auto OEMs, which were relationships and pipelines PLAINTIFF had developed over the previous two years. The newly formed technology group within the Auto Pod absorbed PLAINTIFF's sales pipeline.

16. At the request of senior leadership, PLAINTIFF continued to support the Auto Pod during the recruitment and onboarding of a new dedicated salesperson, Dan McAuliffe. In acknowledgement of PLAINTIFF's continued work for the Auto Pod, EPSILON orally agreed that certain deals in his pipeline would remain eligible for commission payments for a period of four months after the new salesperson was hired and trained.

17. PLAINTIFF and his supervisor, Joe LeMay (SVP), were assured that a written compensation plan addendum would be executed to reflect this agreement. However, PLAINTIFF did not receive an addendum until after PLAINTIFF trained Mr. McAuliffe.

18. The compensation addendum ultimately provided did not reflect the agreed-upon terms that EPSILON and PLAINTIFF had agreed to orally. As a result, PLAINTIFF received only $43,500 in commission compensation for work that, under his original plan, would have generated over $157,000.

19. In early 2024, PLAINTIFF successfully sold a Phase 1 strategic consulting service to Nissan, which concluded in March 2024. Nissan subsequently agreed to extend the service through the end of the year.

20. This deal with Nissan was one of the specific holdover deals identified in the agreement between PLAINTIFF and his supervisor as commission-eligible under the original plan.

21. PLAINTIFF also closed the sale of Epsilon Identity Essentials to Nissan, submitting executable contracts in March and June 2024. Despite this, EPSILON leadership allowed Nissan to begin receiving services prior to executing the contracts, which disincentivized Nissan from signing the contract that PLAINTIFF had closed.

22. Legal approval and executed contracts for the Nissan deals were finally obtained in December 2024. PLAINTIFF and Mr. LeMay timely submitted their commission requests through Zoho, seeking approximately $155,000 in commissions owed to PLAINTIFF.

23. These requests were denied on the grounds of untimeliness, despite EPSILON's own conduct creating the delay and the holdover agreement clearly supported PLAINTIFF's

eligibility for the commission.

24. In PLAINTIFF's year end annual review for 2024, PLAINTIFF for the first time received a rating of "Limited-Well Placed in Role" despite notes throughout his performance review acknowledging his accomplishments and every year prior receiving a rating indicating that his role should expand within the following year to two years.

25. PLAINTIFF and LeMay submitted exception requests to challenge the denial, explaining the holdover agreement and the reasons for delay. The requests were denied again without explanation.

26. PLAINTIFF and LeMay escalated the matter to EPSILON's Chief Revenue Officer, Mike Ng. The requests were again denied.

27. On or about April 14, 2025, PLAINTIFF raised the commission issues with Kai Williams from Human Resources. Williams directed PLAINTIFF to Jim Warter, the head of the compensation exception committee, who again summarily denied the appeal and stated the committee's decision was final.

28. On April 30, 2025, PLAINTIFF resigned from his employment due to DEFENDANT's retaliatory conduct including, its repeated and unlawful failure to pay earned commissions, despite his consistent performance and efforts to resolve the matter internally, and his completion of work beyond his level while circumstances indicated that due to his protected activity of complaining about unpaid commissions he would never receive any earned promotion.

29. As a result of DEFENDANT's actions, PLAINTIFF suffered financial harm, wage loss, loss of benefits, emotional distress, and other consequential damages.

## FIRST CAUSE OF ACTION

Breach of Contract

30. PLAINTIFF incorporates all previous allegations herein.

31. PLAINTIFF and DEFENDANT entered into a series of valid and binding

contracts regarding PLAINTIFF's annual incentive compensation plans, including agreements executed for the years 2023 and 2024. Attached are Exhibit B, the Incentive Compensation Plan for 2023, and Exhibit C, the Incentive Compensation Plan for 2024.

32. In 2023, under the terms of the incentive compensation plan, PLAINTIFF earned a commission in the amount of $88,219.84 upon successfully completing the Hyundai deal. DEFENDANT failed to pay PLAINTIFF the earned commission, thereby breaching the agreement.

33. In or around March 2024, PLAINTIFF and DEFENDANT entered into a new compensation agreement. that expressly incorporated modifications to account for "holdover contracts", deals for which PLAINTIFF had performed significant work, but which had not yet closed. Pursuant to that agreement, PLAINTIFF earned commissions on two Nissan contracts.

34. Despite the terms of the modified agreement, DEFENDANT unilaterally attempted to alter the commission structure after the fact and wrongfully refused to pay PLAINTIFF the full commissions he had earned under the agreement.

35. In 2024, PLAINTIFF and DEFENDANT also entered into an Auto Vertical Coverage Agreement, pursuant to which PLAINTIFF was to receive commissions based on work performed for the Auto Pod. PLAINTIFF fully fulfilled his obligations under this agreement and earned commissions accordingly.

36. Nonetheless, DEFENDANT again unilaterally modified the compensation terms and paid PLAINTIFF only a fraction of what he was owed under the agreement.

37. Under California law, the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract.

38. Even if the Plans grant discretion, that discretion must be exercised in good faith—not used to avoid paying earned commissions pursuant to *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 923 (1985).

39. DEFENDANT's unilateral modification provisions render the agreements illusory *as to DEFENDANT's obligations* only. DEFENDANT cannot rely on the very

provisions that make the contract illusory to avoid paying commissions PLAINTIFF earned through his performance.

40. DEFENDANT's repeated failure to honor the terms of the binding compensation agreements, including the 2023 plan, the modified 2024 plan, and the Auto Vertical Coverage Agreement, constitutes multiple breaches of contract.

41. DEFENDANT's conduct including signing the Plans, requiring employee acknowledgment, and operating under the Plans for years constitutes an enforceable contract notwithstanding the disclaimer language as these are objective manifestations of assent standard under California law.

42. Moreover, DEFENDANT referred to the Plans as "written agreement" for pay that includes "all rates of pay and bases thereof in the agreement" in its executed disclosure under California Labor Code § 2810.5.

43. PLAINTIFF has performed all conditions, covenants, and promises required on his part to be performed under the contracts, or such performance has been excused.

44. PLAINTIFF has suffered damages including lost wages.

45. PLAINTIFF is entitled to consequential damages arising from DEFENDANT's breach.

46. PLAINTIFF is also entitled to attorneys' fees and costs and interest damages.

## **SECOND CAUSE OF ACTION**

Breach of Covenant of Good Faith and Fair Dealing

47. PLAINTIFF incorporates all previous allegations herein.

48. In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

49. PLAINTIFF and DEFENDANT entered into several valid and enforceable compensation agreements, including an annual incentive compensation plan and subsequent modifications in 2023 and 2024.

50. DEFENDANT breached the implied covenant of good faith and fair dealing by repeatedly and unilaterally modifying the commission agreements after PLAINTIFF had earned commissions, with the purpose and effect of avoiding payment of those earned commissions.

51. DEFENDANT further acted in bad faith by permitting third-party clients, including Nissan, to receive services under unsigned contracts. This conduct disincentivized the clients from executing the agreements in a timely manner, thereby frustrating PLAINTIFF's ability to earn commissions under the incentive compensation plan.

52. DEFENDANT's conduct deprived PLAINTIFF of the benefits of the contractual arrangements to which he was entitled.

53. DEFENDANT's conduct was intentional, unfair, and done in bad faith.

54. PLAINTIFF is entitled to all damages resulting from DEFENDANT's breach of their duty.

55. Alternatively, an implied in fact contract should be recognized where, as here, the parties acted as though a contract existed year after year.

56. If such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject-matter and of the surrounding circumstances, then the contract is an implied one. *Marvin v. Marvin* (1976) 18 Cal.3d 660, 678.

57. Each year, DEFENDANT presented PLAINTIFF with a plan, purporting to determine the amount of commissions PLAINTIFF, would be paid and then paid PLAINTIFF and other employees accordingly, even setting up a process for appeals or exceptions.

58. Accordingly, the parties' implied in fact contract should be enforced, and DEFENDANT should be ordered to perform under the implied in fact contract to prevent unjust enrichment of Defendant.

///

**THIRD CAUSE OF ACTION**

Intentional Misrepresentation/ False Promise

59. PLAINTIFF incorporates all previous allegations.

60. DEFENDANT, by and through its agents, including Joe LeMay and Scott Lucas, represented to PLAINTIFF that he would receive commissions on certain sales opportunities from his pipeline—even after reassignment—under his prior compensation plan. Specifically, DEFENDANT represented that PLAINTIFF would be paid commissions on certain "holdover" deals, including contracts with Nissan, provided that those deals closed within four months after the hiring and training of a new salesperson.

61. Despite PLAINTIFF securing deals with Nissan and timely submitting commission requests, DEFENDANT failed to pay PLAINTIFF commissions in accordance with its prior representations. For example, PLAINTIFF received only $43,500 on deals for which he should have received over $157,000. He was also denied approximately $155,000 in commissions on two contracts with Nissan, despite full execution of those contracts and timely submission of his commission requests in accordance with the agreed-upon terms.

62. Although DEFENDANT did not honestly believe that these representations were true at the time they were made as management was aware that the finance department did not honor such agreements, as DEFENDANT failed to provide PLAINTIFF with a compensation plan addendum that reflected the agreed-upon terms. In fact, DEFENDANT's finance department and leadership ultimately rejected PLAINTIFF's commission claims without explanation or due consideration of the agreed holdover structure.

63. DEFENDANT intended and expected PLAINTIFF to rely on these representations, including by continuing to support the Auto Pod, assisting in the training of the new salesperson, and continuing to draft and secure contracts on DEFENDANT's behalf.

64. PLAINTIFF reasonably relied on DEFENDANT's representations. Based on those assurances, PLAINTIFF continued working on deals for DEFENDANT, including the Nissan contracts, and trained his replacement in good faith.

65. As a direct and proximate result of PLAINTIFF's reliance on DEFENDANT's false representations, PLAINTIFF suffered financial harm, including the loss of commissions in excess of $268,000.

66. PLAINTIFF's reliance on DEFENDANT's misrepresentations was a substantial factor in causing his harm.

67. As a result, PLAINTIFF is entitled to compensatory damages in an amount to be proven at trial, together with interest, costs of suit, and such other and further relief as the Court deems just and proper.

## **FOURTH CAUSE OF ACTION**

Failure to Pay Wages
Cal. Lab. Code §218.5

68. PLAINTIFF incorporates all previous allegations.

69. PLAINTIFF performed all work required to earn commissions under these agreements, under which he was entitled to receive commission payments based on the sales and deals he completed.

70. In 2024, when DEFENDANT modified PLAINTIFF's role, the parties agreed, via written email correspondence, to an addendum to the annual commission plan that expressly accounted for "holdover" contracts and PLAINTIFF's continued role within the Auto Pod.

71. Despite these binding agreements, DEFENDANT failed to compensate PLAINTIFF for commissions that he earned.

72. Under California Labor Code § 200, earned commissions constitute wages. Defendant's failure to pay those wages constitutes a violation of Labor Code § 218.5.

73. As a direct and proximate result of DEFENDANT's conduct, PLAINTIFF has suffered damages.

74. As a direct and proximate result of DEFENDANT's conduct, PLAINTIFF is also entitled to attorneys' fees in addition to interest, expenses, and costs of suit.

**FIFTH CAUSE OF ACTION**
Untimely Payment of Wages
Cal. Lab. Code §§ 204, 210

75. PLAINTIFF incorporates all previous allegations.

76. Labor Code § 204 provides that all wages are due and payable twice during each calendar month.

77. DEFENDANT failed to timely pay PLAINTIFF all wages starting in December 2023 alleged herein. Moreover, DEFENDANT delayed payment of PLAINTIFF's commission related to the Hyundai deal for a year after it was earned and thereby payable.

78. Thus, PLAINTIFF is entitled to recovery of penalties under Labor Code § 210 of $100 for the initial violation and then $200 for all subsequent violations as well as 25% of the amount unlawfully withheld.

**SIXTH CAUSE OF ACTION**
Failure to Provide Accurate Wage Statements
Cal. Lab. Code §§ 226(a) and 226(e)

79. PLAINTIFF incorporates all previous allegations.

80. Labor Code § 226(a) and/or IWC Wage Orders (See 8 Cal. Code of Regs, § 11040(8) provide that every employer shall, semimonthly or at the time of each payment of wages, provide each employee with a written, accurate statement showing, *inter alia*, the gross wages earned, the total hours worked by the employee, and the applicable hourly rate in effect during the pay period and the corresponding number of hours earned at each hourly rate.

Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which the violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4000) and is entitled to an award of costs and attorneys' fees.

81. Throughout PLAINTIFF's employment, and particularly in connection with Hyundai and Nissan sales transactions, DEFENDANT failed to provide wage statements that accurately reflected earned commission wages.

82. Specifically, DEFENDANT failed to list the $88,219.84 commission from the Hyundai sale as part of PLAINTIFF's wage statements until nearly a year after the commission was earned. Similarly, PLAINTIFF's wage statements failed to include any commission amounts tied to the Nissan sales, despite PLAINTIFF's entitlement under the holdover agreement.

83. As a result, PLAINTIFF received inaccurate and incomplete wage statements that did not comply with the requirements of Labor Code § 226(a).

84. DEFENDANT is liable to PLAINTIFF for the amounts described above, in addition to the civil penalties provided for under Labor Code § 226.3.

85. As a direct and proximate result of DEFENDANT'S conduct, PLAINTIFF is entitled to attorneys' fees under Labor Code § 226(e), in addition to interest, expenses, and costs of suit.

## SEVENTH CAUSE OF ACTION
Waiting Time Penalties
Cal. Lab. Code §§ 202, 203

86. PLAINTIFF incorporates all previous allegations.

87. Labor Code § 202 provides that all wages must be paid to an employee within 72 hours of notice of resignation.

88. Labor Code § 203 provides that an employer who willfully fails to pay such wages due to an employee who is discharged must pay that employee waiting-time penalties in the form of a day's wages every day (up to 30 days) until all the wages are paid.

89. On April 30, 2025, PLAINTIFF resigned after providing over 72 hours' notice. DEFENDANT willfully failed and refused to make timely payment of wages to PLAINTIFF as the term willfully has been interpreted under California law.

90. As a direct and proximate result of DEFENDANT's conduct, DEFENDANT is liable to PLAINTIFF for thirty days of waiting time pay pursuant to Labor Code § 203.

91. As a direct and proximate result of DEFENDANT's conduct, PLAINTIFF is also entitled to attorneys' fees under Labor Code §§ 218.5 and 1194, in addition to interest, expenses, and costs of suit.

**EIGHTH CAUSE OF ACTION**
Unfair Business Practices
Cal. Bus. & Prof. Code § 17200 *et seq.*

92. PLAINTIFF incorporates all previous allegations herein.

93. The California Business & Professions Code ("B&P Code") § 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

94. B&P Code § 17202 provides: "[n]otwithstanding Section 2289 of the Civil Code, specific or preventative relief may be granted to enforce a penalty, forfeiture, or penal law in case of unfair competition."

95. B&P Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

96. B&P Code § 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the Unfair Business Practices Act.

97. Labor Code § 90.5(a) states that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of workers by failing to comply with the minimum standards of the law.

98. Pursuant to B&P § 17202, PLAINTIFF is entitled to enforce all applicable provisions of the Labor Code.

99. DEFENDANT has committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent practices and acts

described in this Complaint, including violations of the California Labor Code, including Labor Code §§ 98.6, 1102.5, and 2751, and other statutes and provisions.

100. By violating these statutes and regulations, the acts of DEFENDANT constitute unfair and unlawful business practices under B&P Code § 17200 *et seq*.

101. The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of B&P Code §§ 17200 and 17203, *et seq*. DEFENDANT'S violation of the law and regulations described above constitutes a business practice because it was done repeatedly over a significant period of time and in a systematic manner to the detriment of PLAINTIFF. The acts and practices described above have allowed DEFENDANT to gain an unfair competitive advantage over law-abiding employers and competitors.

102. As a direct and proximate result of the acts and practices described herein, PLAINTIFF has been denied compensation in an amount to be proven at trial. PLAINTIFF has accordingly suffered injury in fact and has lost money or property as a result of DEFENDANT's unfair, unlawful and fraudulent business practices, and unfair competition.

103. Injunctive relief is necessary and appropriate to prevent DEFENDANT from repeating the unlawful, unfair, and fraudulent business acts and practices described herein.

104. Pursuant to § 17203 and/or any other applicable law, PLAINTIFF seeks an order preventing DEFENDANT from engaging in unlawful, unfair, and fraudulent conduct and preventing DEFENDANT from profiting and benefiting from illegal and wrongful acts.

105. DEFENDANT engaged in unlawful and unfair business acts including wage theft. Thus, PLAINTIFF seeks restitution and injunctive relief under the UCL.

## NINTH CAUSE OF ACTION

Retaliation
Labor Code § 98.6

106. PLAINTIFF incorporates all previous allegations.

107. California Labor Code § 98.6 protects employees who complain orally or in writing about unpaid wages, or for exercising (on behalf of oneself or other employees) any of the rights provided under the Labor Code or Orders of the Industrial Welfare Commission.

108. Furthermore, PLAINTIFF demanded timely payment of the earned commission to himself.

109. Under Labor Code § 98.6, PLAINTIFF's objection first to the non-payment of commissions for the Hyundai deal in writing, his insistence in executing a written agreement regarding his commissions, and his objection to the non-payment and underpayment of commissions earned was protected activity and constituted an exercise of rights protected by the California Labor Code.

110. After PLAINTIFF's first objection to the non-payment of commissions, he was reassigned to a different group, losing years of lead development.

111. Due to the extremely close temporal proximity between PLAINTIFF's protected complaint and his reassignment, DEFENDANT's motivation will be presumed to be retaliatory.

112. PLAINTIFF's protected activity was a substantial motivating factor in DEFENDANT's decision to reassign him.

113. Moreover, PLAINTIFF repeatedly insisted on a valid written commission agreement that reflected the oral agreement the parties had made throughout 2024.

114. In response, DEFENDANT created a less favorable agreement which included unlawful terms allowing for unilateral changes. DEFENDANT also then failed to pay PLAINTIFF on work he completed during the holdover. DEFENDANT further completed a performance review of PLAINTIFF's work that retaliatorily excluded him from promotion consideration despite acknowledging his excellent performance throughout 2024.

115. When PLAINTIFF appealed the commission payments, DEFENDANT failed to consider his position, summarily dismissing his valid complaints of non-payment, leaving PLAINTIFF no choice but to resign his employment as DEFENDANT made it clear that there

were no opportunities for advancement and PLAINTIFF would not be paid according to any agreement made.

116. As a direct and proximate result of DEFENDANT's retaliatory conduct, PLAINTIFF has suffered damages including, but not limited to, lost wages, lost employment benefits, loss of equity compensation opportunities, and emotional distress, in amounts to be proven at trial.

117. PLAINTIFF is further entitled to recover civil penalties, attorneys' fees and costs, and interest.

## TENTH CAUSE OF ACTION

Retaliation

Violation of Labor Code § 1102.5

118. PLAINTIFF incorporates all previous allegations herein.

119. Labor Code § 1102.5 prohibits employers from retaliating against an employee who reports unlawful behavior internally to "a person with authority over the employee" or to another employee with the authority to "investigate, discover, or correct" the reported violation.

120. Furthermore, PLAINTIFF demanded timely payment of the earned commissions.

121. Under Labor Code § 1102.5, PLAINTIFF's objection first to the non-payment of commissions for the Hyundai deal in writing, his insistence in executing a written agreement regarding his commissions, and his objection to the non-payment and underpayment of commissions earned was protected activity as he reasonably believed DEFENDANT's conduct to be a violation of the law which he was reporting to a person with authority over himself.

122. After PLAINTIFF's first report of the non-payment of commissions, he was reassigned to a different group, losing years of lead development.

123. Due to the extremely close temporal proximity between PLAINTIFF's protected complaint and his reassignment, DEFENDANT's motivation will be presumed to be retaliatory.

124. PLAINTIFF's protected activity was a substantial motivating factor in DEFENDANT's decision to reassign him.

125. Moreover, PLAINTIFF repeatedly insisted on a valid written commission agreement that reflected the oral agreement the parties had made throughout 2024.

126. In response, DEFENDANT created a less favorable agreement which included unlawful terms allowing for unilateral changes. DEFENDANT also then failed to pay PLAINTIFF on work he completed during the holdover. DEFENDANT further completed a performance review of PLAINTIFF's work that retaliatorily excluded him from promotion consideration despite acknowledging his excellent performance throughout 2024.

127. When PLAINTIFF appealed the commission payments, DEFENDANT failed to consider his position, summarily dismissing his valid complaints of non-payment, leaving PLAINTIFF no choice but to resign his employment as DEFENDANT made it clear that there were no opportunities for advancement and PLAINTIFF would not be paid according to any agreement made.

128. As a direct and proximate result of DEFENDANT's retaliatory conduct, PLAINTIFF has suffered damages including, but not limited to, lost wages, lost employment benefits, loss of equity compensation opportunities, and emotional distress, in amounts to be proven at trial.

129. PLAINTIFF is further entitled to recover civil penalties, attorneys' fees and costs, and interest.

## ELEVENTH CAUSE OF ACTION

Wrongful Termination in Violation of Public Policy

130. PLAINTIFF incorporates all previous allegations herein.

131. California recognizes a cause of action for wrongful termination in violation of public policy when an employer violates a state or federal statute or general principles of public policy by terminating an individual.

132. PLAINTIFF was constructively terminated by DEFENDANT in retaliation for his protected activities under the Labor Code.

133. DEFENDANT's conduct of terminating PLAINTIFF for conduct that constitutes

protected activity under California Labor Code § 98.6 and § 1102.5 and thereby violates the Public Policy of the State of California as expressed in the California Labor Code.

134. As a direct and proximate result of DEFENDANT's retaliatory conduct, PLAINTIFF has suffered damages including, but not limited to, lost wages, lost employment benefits, loss of equity compensation opportunities, and emotional distress.

135. PLAINTIFF is entitled to recover general and consequential damages, punitive damages, and attorneys' fees and costs from DEFENDANT, as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT as follows:

1. For a declaratory judgment that DEFENDANT violated the Labor Code when it lowered PLAINTIFF's performance review, excluded PLAINTIFF from promotion opportunities, and constructively terminated PLAINTIFF's employment in retaliation for PLAINTIFF's complaints regarding unpaid commission compensation and illusory commission agreements.

2. For a declaratory judgment that DEFENDANT failed to pay PLAINTIFF all wages due;

3. For a declaratory judgment that DEFENDANT violated B&P Code §§ 17200 and 17203, *et seq.*;

4. For a permanent and mandatory injunction prohibiting DEFENDANT, their officers, agents, employees, affiliated companies, and all those working in concert with them from committing future violations of the laws and public policies described herein;

5. For an award of restitution for the unjust enrichment of DEFENDANT when it failed to pay PLAINTIFF earned commissions on deals by which DEFENDANT profitted;

6. For prejudgment interest including interest pursuant to CCC § 3287(a);

7. For an order imposing all relevant statutory and/or civil penalties provided by law;

8. For an order awarding PLAINTIFF consequential damages;

9. For an order that DEFENDANT must disgorge ill-gotten gains;

10. For award of reasonable attorneys' fees and expert witness fees, as provided by Labor Code and other applicable law;

11. For all costs of suit; and

12. For such other and further relief as this Court deems just and proper.

Dated: June 8, 2026

KLETTER.LAW

By: Rachel Hallam

Cary Kletter
Rachel Hallam
Attorneys for PLAINTIFF
SKIP STREETS